UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

THADDEUS M. LIETZ,

        Plaintiff,

  v.

PROCTER & GAMBLE COMPANY,
JANE DOE (*Plant Manager*),
JANE DOE (*Human Resource Manager*)
and JOHN DOE (*Floor Supervisor*),

        Defendants.

Case No. 25-cv-1662-pp

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4) AND SCREENING COMPLAINT**

---

On October 28, 2025, the plaintiff—who is incarcerated at Oshkosh Correctional Institution and is representing himself—filed a complaint alleging that his former employer wrongfully terminated him in violation of the Americans with Disabilities Act (ADA). Dkt. No. 1. The plaintiff also filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 4. The court will grant the motion for leave to proceed without prepaying the filing fee and will order service of the complaint on Procter & Gamble by the United States Marshals Service.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 4)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff filed his complaint while incarcerated. See 28 U.S.C. §1915(h). The

1

PLRA lets the court allow an incarcerated plaintiff to proceed without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On November 26, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $17.88. Dkt. No. 6. The court received $18 from the plaintiff on December 15, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     Legal Standard

The court next must "screen" the complaint to decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). A document filed by a self-represented litigant must be "liberally construed[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). Similarly, a complaint filed by a self-represented litigant, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id.

Even though courts liberally construe their filings, self-represented litigants still must comply with Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To state a claim against the defendants, the complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663–64.

B.  The Complaint

The plaintiff alleges this is a "large claim lawsuit" brought under state and federal employment laws. Dkt. No. 1 at 1. He alleges that on November 16, 2023, he was wrongfully terminated "due to falsified, misrepresented and/or inaccurate performance claim in violation of the union contract and [procedures]" and because of his disability in violation of the ADA. Id. The plaintiff alleges that he worked at Procter & Gamble's Green Bay plant prior to his termination. Id. He asserts that "John Doe floor supervisor" falsely claimed that the plaintiff had "signed a product/machine change over sheet and caused the error of wrong date codes to be printed on facial tissue product boxes." Id. at 2. The plaintiff alleges he worked in the case packing area and was not responsible for turning on the machines in this area, nor did he have the

3

password needed to change the date codes on those machines because he was in training at the time. Id.

The plaintiff further alleges that there was no "good cause" to terminate him under the union contract between his employer and the United Steel Workers Association. Id. He alleges that he was deprived of a fair hearing with a union representative present during the termination proceedings. Id. He alleges that if he had had proper representation, he could have asked for video footage of the alleged incident, which he says would have proven his innocence. Id. at 2–3.

The plaintiff alleges that "John Doe Floor Supervisor" is liable for wrongful termination because he was aware that the plaintiff was in training at the time of the incident and failed to investigate the video footage. Id. at 4. The plaintiff alleges that "Jane Doe Human Resource Manager" is liable for wrongful termination because she did not fairly investigate the video footage or ensure that the plaintiff had union representation during the termination proceedings. Id. The plaintiff alleges that "Jane Doe Plant Manager" is liable because she had the "final say before an employee is terminated" and had an obligation to perform "due diligence" to ensure the termination was not wrongful. Id.

The plaintiff also alleges that he was terminated due to his disability. Id. The plaintiff explains that he has only one arm due to a birth defect, which he alleges is a disability under state and federal law. Id. The plaintiff alleges that under the 2023 union contract with Procter & Gamble, an employee could

4

become certified within a machine area upon request and after a two-week trial period. Id. at 4–5. The plaintiff asserts that his trainers were not properly training him on the case packing machines because of his disability. Id. at 5. He says that he attempted to study the operating manuals and machine blueprints himself to become proficient in operating the machines. Id. But the plaintiff alleges that John Doe Plant Manager refused to give him copies of the materials he requested in writing. Id. The plaintiff states that he believes this was due to disability discrimination, that he "was purposely set up for failure" and that the plant manager did not want him to successfully complete the trial period. Id.

The plaintiff alleges that John Doe Floor Manager is liable for disability discrimination because he wrongfully terminated the plaintiff's employment prior to allowing the plaintiff to complete the trial period. Id. He asserts that Jane Doe Human Resources Manager should also be liable "for not ensure through reckless and/or neglectful action that [plaintiff] had every opportunity to prove his abilities through 'Trial Period.'" Id. He contends that Jane Doe knew that he had requested a trial period and that he was terminated shortly thereafter. Id. at 5–6. The plaintiff alleges that this termination was in violation of state and federal employment discrimination laws and constituted wrongful termination in violation of public policy under the common law. Id. at 6.

The plaintiff says that he requested an accommodation for his physical disability to allow him to properly operate the case packing machine, but that the accommodation was not provided. Id. He asserts that all defendants are

5

liable for disability discrimination because he requested this accommodation in writing and the defendants were aware of the request. Id. He says that the machine blueprints, operating manuals and small hand tools all were possible accommodations that would have enabled him to properly perform his job. Id. at 6–7. The plaintiff alleges that the defendants used him as a "scapegoat" for the date code incident to cover up their discriminatory intent. Id. at 7.

For relief, the plaintiff seeks compensatory damages. Id.

C.   Analysis

The plaintiff appears to raise three claims based on his termination: breach of a union contract, disability discrimination under state and federal law and common law wrongful termination.

The plaintiff alleges that the defendants violated the applicable union contract by terminating him without good cause and by denying him a union representative during the termination proceedings. Section 301 of the Labor Management Relations Act allows a union employee to sue his employer for violation of a collective bargaining agreement. 29 U.S.C. §185. But it is clear from the face of the complaint that the plaintiff's claim for breach of the collective bargaining agreement is untimely. A claim for breach of the collective bargaining agreement must be made within six months of the alleged breach. Lewis v. Loc. Union No. 100 of Laborers' Int'l Union of N. Am., AFL-CIO, 750 F.2d 1368, 1378 (7th Cir. 1984) (citing DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 169–70 (1983)). The plaintiff filed this complaint on October 28, 2025; for this claim to be timely, the breach must have occurred on or after

April 28, 2025. The plaintiff alleges that he was terminated years earlier, in November 2023. Although a complaint is not required to address affirmative defenses such as the statute of limitations, the court may dismiss a claim as untimely "if 'the allegations of the complaint itself set forth everything necessary to satisfy'" the statute of limitations defense. See Brooks v. Ross, 578 F.3d 574, 579 (7th Cir. 2009) (quoting United States v. Lewis, 411 F.3d 838, 842 (7th Cir. 2005)). The allegations in the complaint clearly show that the alleged breach occurred more than six months before the plaintiff filed this federal lawsuit. The court must dismiss with prejudice as time-barred the plaintiff's claim for breach of the collective bargaining agreement.

Next is the plaintiff's disability discrimination claim. To bring a claim for discrimination under the ADA, the plaintiff must allege three elements: "(1) that he is disabled within the meaning of the ADA, (2) that he is qualified to perform the essential functions of his job either with or without reasonable accommodation, and (3) that he suffered from an adverse employment action because of his disability." Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1115 (7th Cir. 2001) (citing Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 669 (7th Cir. 2000)). The plaintiff alleges that he is disabled due to having a single arm and that his requests for training materials and a trial period were denied due to his disability. He alleges that he requested a device that would allow him to operate the case packing machines with his single arm. Construing these allegations liberally, the court finds that the plaintiff has successfully alleged a disability discrimination claim under the ADA.

7

The plaintiff also has stated a failure-to-accommodate claim under the ADA. To state a failure-to-accommodate claim, the plaintiff must allege that he (1) was a qualified individual with a disability; (2) the defendant was aware of his disability; and (3) the defendant failed to reasonably accommodate his disability. EEOC v. AutoZone, Inc., 809 F.3d 916, 919 (7th Cir. 2016) (citing James v. Hyatt Regency Chi., 707 F.3d 775, 782 (7th Cir. 2013)). The plaintiff alleges that he requested a device to assist him with operating the case packing machines and that "certain small hand tools were possible accommodations" that would have allowed him to operate the machines, but that the defendants denied him these accommodations. At the pleading stage, these allegations are sufficient to state a claim for failure to accommodate.

The plaintiff brought his claims against Procter & Gamble and several of its employees. But individual employees or supervisors are not proper defendants in a disability discrimination case because they are not considered "employers" under the ADA. See EEOC v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1279–82 (7th Cir. 1995) ("individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA"). The court must dismiss the plaintiff's ADA claims against Jane Doe Plant Manager, Jane Doe Human Resource Manager and John Doe Floor Supervisor.

It is not clear whether the plaintiff has exhausted his administrative remedies for the ADA claim. Before a plaintiff files an ADA case in federal court, he must file a charge of discrimination with the EEOC. Riley v. City of Kokomo, 909 F.3d 182, 189 (7th Cir. 2018) ("An ADA plaintiff must file a charge with the

8

EEOC before bringing a court action against an employer."). This requirement gives the EEOC and the employer a chance to settle the dispute before litigation and gives the employer fair notice of the employee's grievances. Huri v. Office of the Chief Judge of the Cir. Ct. of Cook Cnty., 804 F.3d 826, 831 (7th Cir. 2015). If the plaintiff has failed to exhaust his administrative remedies, the court must dismiss the suit without prejudice, leaving the plaintiff free to refile the case once he has exhausted his claims. Greene v. Meese, 875 F.2d 639, 643 (7th Cir. 1989); see also Teal v. Potter, 559 F.3d 687, 693 (7th Cir. 2009). It isn't clear from the complaint whether the plaintiff filed a charge of discrimination with the EEOC. It is premature to dismiss the claims on that basis, so the court will allow the plaintiff to proceed with his disability discrimination claims. See Aku v. Chi. Bd. of Educ., 290 F. Supp. 3d 852, 861–62 (N.D. Ill. 2017) (citing Salas v. Wis. Dep't of Corr., 493 F.3d 913, 921 (7th Cir. 2007)).

Finally, the plaintiff brings a common law wrongful termination claim. Wisconsin law has a narrow exception to the presumption of at-will employment, which provides that "an at-will employee has a claim against its employer for wrongful termination if the employee was fired for fulfilling, or refusing to violate, a fundamental, well-defined public policy or an affirmative legal obligation established by existing law." Emiabata v. Marten Transp., Ltd., 574 F. Supp. 2d 912, 918 (W.D. Wis. 2007) (citing Bammert v. Don's Super Valu, 254 Wis. 2d 347, 350–51 (Wis. 2002)). The plaintiff must "identify a fundamental and well defined public policy in [his] complaint sufficient to

9

trigger the exception to the employment at will doctrine." Batteries Plus, L.L.C. v. Mohr, 244 Wis. 2d 559, 567–68 (Wis. 2001) (quoting Strozinsky v. School District of Brown Deer, 237 Wis. 2d 19, 39–42 (Wis. 2000)). The "fundamental and well defined public policy" must be supported by existing law, which includes "constitutional and statutory law and some administrative provisions." Emiabata, 574 F. Supp. 2d at 918 (citing Strozinsky, 237 Wis. 2d at 42–43).

The plaintiff alleges that the defendants are liable for wrongful termination because *they* violated public policy by engaging in disability discrimination. But that is not the standard under Wisconsin law. The plaintiff must show that he was fired because *he* either fulfilled or refused to violate public policy. The plaintiff has not identified any public policy that *he* fulfilled or refused to violate. The court must dismiss this claim. See Emiabata, 574 F. Supp. 2d at 918 (granting motion to dismiss wrongful termination claim where complaint failed to identify a well-defined public policy).

The court will allow the plaintiff to proceed with his disability discrimination claim against his former employer, Procter & Gamble. All other claims and defendants are dismissed for failure to state a claim.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 4.

The court **ORDERS** that the plaintiff's claims for breach of the collective bargaining agreement and wrongful termination in violation of public policy are **DISMISSED**.

The court **DISMISSES** defendants Jane Doe Plant Manager, Jane Doe Human Resource Manager and John Doe Floor Supervisor.

The court **ORDERS** the United States Marshal to serve a copy of the complaint and this order on defendant Procter & Gamble under Federal Rule of Civil Procedure 4. The court advises the plaintiff that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals will give the plaintiff information on how to remit payment. Although Congress requires the court to order service by the U.S. Marshals Service precisely because indigent plaintiffs do not have the funds to pay filing fees, it has not made any provision for these service fees to be waived by either the court or the U.S. Marshals Service. The court is not involved in collection of the fee.

The court **ORDERS** defendant Proctor & Gamble to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$332** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the

11

Case 2:25-cv-01662-PP   Filed 02/03/26   Page 11 of 13   Document 7

amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Oshkosh Correctional Institution, where the plaintiff is incarcerated.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 3rd day of February, 2026.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**